1  Alan Himmelfarb (Cal. Bar. No. 90480)
   KAMBEREDELSON, LLP
2  2757 Leonis Blvd.
   Los Angeles, CA 90058
3  (323) 585-8696
   ahimmelfarb@kamberedelson.com
4
   *Counsel for Plaintiff*
5  [additional counsel appear on signature page]

6          **IN THE UNITED STATES DISTRICT COURT**
7        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

8  ROBERT WILDER, an individual, on his own      )    No. SACV09-834 DOC(RNBx)
   behalf and on behalf of all others similarly situated, )
9                                                 )    **CLASS ACTION COMPLAINT**
              Plaintiff,                          )    **AND JURY DEMAND**
10 v.                                             )
                                                  )
11 JPMORGAN CHASE BANK, N.A., and FIRST           )
   AMERICAN CORELOGIC, INC.,                      )
12                                                )
              Defendants.                         )    **BY FAX**
13

14       Robert Wilder ("Wilder" or "Plaintiff"), for his complaint, alleges as follows upon

15 information and belief, based upon, *inter alia*, investigation conducted by his attorneys, except as

16 to those allegations pertaining to Plaintiff and his counsel personally, which are alleged upon

17 personal knowledge:

18                              **Introduction**

19       1.      This case is about Defendant JPMorgan Chase Bank, N.A.'s ("Chase") illegal

20 reduction of credit limits on home equity lines of credit ("HELOCs") across the country.  In an

21 attempt to limit its exposure to generally declining values in the United States housing market,

22 Chase, with substantial help and assistance from First American CoreLogic ("CoreLogic"), has

23 violated the Truth in Lending Act and its implementing regulation, Regulation Z, and has broken

24 its contractual promises to its HELOC account holders (collectively "Class Members") by using

25 credit limit reduction standards and triggering events contrary to federal regulations, by reducing

26 credit limits or freezing HELOC accounts without first reasonably assessing the value of each

27 affected property, and by failing to provide adequate notice of such actions to its customers.  As a

28

1   result, Chase has collectively denied its customers access to hundreds of millions of dollars worth

2   of credit at a critical economic time.

3       2.      Each member of the Class had a HELOC for which Chase reduced the available

4   credit in a manner that was both illegal and unfair.  As a result of Defendants' wrongful actions,

5   Plaintiff Wilder brings this class action on behalf of himself and the putative class and sub classes

6   for actual damages and attorneys fees under Regulation Z of the Truth-in-Lending Act ("TILA")

7   (15 U.S.C. § 1640(a); 12 C.F.R. § 226.5(b)), equitable and injunctive remedies under California's

8   Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et. seq.*) and damages for

9   breach of contract.

10                          **Nature of the Claim**

11      3.      As recently as April 2009, Chase sent a form letter to thousands of its HELOC

12  customers, including Plaintiff and the other class members, summarily lowering their lines of

13  credit.  The letter stated:

14          With home values falling in many parts of the country, we've used a proven
            valuation method to estimate your home's value at [insert amount].  Unfortunately,
15          that valuation no longer supports the full amount of your Line of Credit, so we are
            suspending future draws against your account as of [insert date].
16
17  (See "Important Information about your Home Equity Line of Credit" received by Plaintiff, a true

18  and accurate copy of which is attached as Exhibit A.)

19      4.      The letter does not disclose the initial value of the property, the amount by which

20  the property has supposedly decreased, or the methodology used to compute the decline in home

21  value or other figures.  Rather, on a second page for "Frequently Asked Questions" the letter

22  states:

23          Q:      Why did Chase take this action at this time?
            A:      We are doing everything we can to keep homeowners from owing more than their
24                  home is worth, especially as home values in many areas of the country are falling.
                    Your property's value no longer supports your full Home Equity Line of Credit.
25  ...
            Q:      How did you get the new value for my home?  I have not met with an appraiser
26                  from Chase.
            A:      We used an industry standard method to value your property that did not
27                  require an appraiser to enter your home.  We have confidence that our
                    valuation for your property is accurate....
28

1  (See Ex. A.)

2       5.     Chase lacked a sound factual basis for sending these letters and reducing credit

3  limits or freezing its customers' HELOCs.  Defendant Chase, with substantial assistance and

4  support from co-Defendant CoreLogic, knowingly and intentionally used faulty and dubious

5  automated formulas, with unreliable and inaccurate analyses, data, equations, and processes

6  vulnerable to manipulation, including but not limited to Automated Valuation Models ("AVMs"),

7  to unreasonably undervalue homes so as to falsely trigger Chase's right to freeze accounts or

8  lower credit limits.  Furthermore, Defendant Chase intentionally ignored Regulation Z's definition

9  of significant decline in value and instead used its own triggering events to purportedly grant it the

10  right to freeze HELOC accounts or reduce credit limits.  As a result, Chase, in violation of federal

11  law, reduced the credit limits and/or froze the HELOC accounts of many homeowners, including

12  Plaintiff, whose property values had not declined significantly.

13       6.     While federal law permits Defendants to reduce credit limits if an individual

14  property securing a HELOC significantly declines in value, it violates federal law to reduce the

15  credit limits of or suspend HELOC accounts without first assessing the value of the collateral that

16  secures each affected HELOC account or having a sound factual basis for the suspension or

17  reduction.  It is also unlawful to use triggering events (ie., circumstances defined under Regulation

18  Z the occurrence of which allows lenders to reduce credit limits or suspend HELOC accounts)

19  inconsistent with those provided for by Regulation Z.   As a result, Chase's intentional and

20  systematic freezing of accounts and mass reduction of credit limits based on unreasonably faulty

21  AVMs, its intentional and systematic concealment of its processes, standards and requirements for

22  reducing, suspending or re-instating such accounts or credit limits, and its use of a 5% reduction in

23  equity as a standard "triggering event" was inconsistent with Regulation Z and was and remains

24  illegal.

25       7.     Defendants' post-credit reduction handling, management and administration of

26  customer complaints, inquiries and attempted appeals are likewise unfair, unreasonable and illegal.

27  When a customer attempts to participate in Chase's "appeal process," Chase withholds necessary

28

1  and material information, including but not limited to the actual valuation of the real property

2  securing the HELOC at the time of the HELOC's origination or most recent credit limit increase,

3  the balance of any first mortgage at those times, the value required for reinstatement, and/or the

4  true present value of the property.  Chase also conceals or falsely claims it is unable to disclose the

5  method and/or the standards used to determine these values.  This information is material and

6  needed by the customer in order to determine whether an appeal should be pursued.

7      8.     Chase's HELOC reductions are not only illegal; they are patently unconscionable.

8  On October 3, 2008, Congress passed the Emergency Economic Stabilization Act of 2008, Pub. L.

9  No. 110-343.  As part of this law, Chase obtained, on information and belief, approximately $25

10  billion from an unprecedented $700 billion bailout funded entirely by American taxpayers.  The

11  rationale advanced for the bailout by its proponents was that the banks needed the money to ensure

12  liquidity in the face of the worsening subprime mortgage disaster.

13      9.     Despite Chase's statements to Congress to the contrary, Chase has intentionally

14  failed to meet its obligations to its customers and has intentionally deprived those customers of

15  crucial affordable consumer credit at a critical time.

16      10.    In stark contrast, Chase's HELOC borrowers such as Plaintiff, like most American

17  consumers, are struggling in a faltering economy, yet they continue to meet their mortgage

18  obligations.  These customers have incurred appraisal fees, an increased price of credit, reduced

19  credit scores, lost interest and other damages.

20                                   **Parties**

21      11.    **Plaintiff Robert Wilder:**  Wilder maintains his primary residence in Scottsdale,

22  Arizona (the "subject matter property").  In or around July 2003, Wilder obtained a HELOC

23  through Bank One in the amount of $250,000 secured by the subject matter property.

24      12.    **Defendant JPMorgan Chase Bank, N.A.:**  Chase is a national banking

25  association with its main office located at 1111 Polaris Parkway Columbus, OH 43240.  On

26  information and belief, Chase merged with or otherwise acquired the assets and assumed the

27  liabilities of Bank One on July 1, 2004.  Following the merger, Chase serviced, and at all relevant

28

1    times is considered the lender for, Wilder's HELOC.

2         13.    **Defendant First American CoreLogic, Inc.:** CoreLogic is a company

3    headquartered at 4 First American Way, Santa Ana, CA 92707, that offers a broad range of

4    products including property profiles, digital street maps, plat maps and automated valuation

5    models. In 2006, Chase and CoreLogic, or CoreLogic's parent corporation, the First America

6    Corporation, formed "Quantrix Valuation," a joint venture designed to give Chase more direct

7    control over its property appraisals. Today, on information and belief, First America Corporation

8    operates Quantrix Valuation as a wholly owned subsidiary.

9                        **Jurisdiction and Venue**

10         14.    This Court has subject matter jurisdiction over this case under 28 U.S.C. §

11    1332(d)(2). This Complaint alleges claims on behalf of a national class of homeowners who are

12    minimally diverse from Defendants. On information and belief, the aggregate of these claims

13    exceeds the sum or value of $5,000,000. This Court further has federal question subject matter

14    jurisdiction under 28 U.S.C. § 1331 as this action arises in part under Regulation Z of the Truth in

15    Lending Act, 15 U.S.C. § 1647, 12 C.F.R. § 226.5(b). This Court has supplemental subject matter

16    jurisdiction over the pendent state law claims under 28 U.S.C. § 1367.

17         15.    a.    Defendant Chase is a national banking association whose main offices are

18    in Ohio, and is considered a citizen of Ohio for the purposes of diversity jurisdiction under 28

19    U.S.C. § 1348 and *Wachovia Bank*, 546 U.S. 303.

20             b.    Defendant CoreLogic is a California corporation headquartered in Santa

21    Ana.

22         16.    Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2), as a

23    substantial part of the events, circumstances, and/or omissions giving rise to these claims occurred

24    in this District.

25         17.    This Court has personal jurisdiction over Defendants under Cal. Code Civ. Proc. §

26    410.10 because some of the acts alleged herein were committed in California (specifically in the

27    Central District of California), and because Defendants are registered to do business in this State

28    and actively conduct business in this District.

**Allegations as to Plaintiff's Individual Claims**

18.     In or around July 2003, Bank One and Wilder entered into a HELOC agreement under the terms of which Bank One provided Wilder a $250,000 line of credit secured by a mortgage on the subject matter property. On information and belief, Bank One's valuation of the subject matter property at the time that HELOC was granted was $900,000.

19.     In April 2009, Defendants mailed Wilder a letter indicating that they had suspended Wilder's account from future draws. The letter, received April 22, 2009, was undated and stated that the suspension was due to the fact that a valuation of $811,800 no longer supports the full amount of the credit line. The suspension would take effective April 17, 2009. (See Ex. A).

20.     Following the notice, Wilder contacted Chase's customer service representatives by phone and in writing. Wilder also sent a complaint to the Office of the Comptroller of the Currency.

21.     Chase responded on both the telephone and in writing that Chase is entitled, in high loan to value situations, to lower HELOC credit limits or suspend accounts when the value of the unencumbered equity is reduced by 5%. This is despite Regulation Z's illustration that permits such reductions only when the unencumbered equity has been reduced by 50%, and the official commentary of Regulation Z, 226.5b(f)(3)(i), which provides:

> A creditor may not include any "triggering events" or responses that the regulation expressly addresses in a manner different from that provided in the regulation. For example, an agreement may not provide that the margin in a variable-rate plan will increase if there is a material change in the consumer's financial circumstances, because the regulation specifies that temporarily freezing the line or lowering the credit limit is the permissible response to a material change in the consumer's financial circumstances. Similarly a contract cannot contain a provision allowing the creditor to freeze a line due to an insignificant decline in property value since the regulation allows that response only for a significant decline.

Chase never discloses how it determines there exists a "high loan to value" situation, nor how it determined Wilder's loan to value ratio was "high." On information and belief, Chase's HELOC policies, practices and contracts with Plaintiff and the other Class and Subclass members unlawfully purport to allow them to lower credit limits or suspend HELOC accounts due to

1 insignificant declines in property values and/or include other "triggering events" that are not
2 permitted by Regulation Z.

3      22.     Chase further indicated that it obtained the $811,800 valuation by utilizing an
4 AVM obtained from co-Defendant First American CoreLogic. Chase stated, "Since the process
5 by which FACL derives its AVM values is a proprietary algorithm that is not shared with us, we
6 are unable to provide typical valuation details such as comparable properties used to assess value."

7      23.     Chase further offers a so-called appeals process. As part of this process, Chase
8 informed Wilder he had to order and pay for an appraisal from an appraisal service of Chase's
9 choosing. Once the appraisal is complete, Wilder had to send the completed appraisal and a
10 formal request for reinstatement to Chase. In its notice, Chase stated, "Any reinstatement of the
11 credit line will be at our discretion...." (See Ex. A.)

12      24.     Wilder reluctantly ordered the appraisal using, as required by Chase, Chase's
13 chosen appraisal service. The appraisal, which Wilder forwarded on to Chase on or around June
14 16, 2009, showed the value of the property had *increased* from the date the HELOC had first been
15 opened from $900,000 to $970,000. Despite the fact its own appraisal service showed the value
16 had actually increased by 7.77% (and that the available equity had increased even greater due to
17 reductions in the balance of the first mortgage), Chase refused to reinstate Wilder's HELOC.

18      25.     Wilder's HELOC with Defendants was his primary line of credit. Defendants'
19 unreasonably low valuation of Wilder's home value and suspension of draws on Wilder's HELOC
20 dramatically decreased the amount of credit he had available and, on information and belief,
21 adversely impacted Wilder's credit score.

22                                    **Class Certification Allegations**

23      26.     Plaintiff seeks certification of a class and one subclass under both Fed. R. Civ. P.
24 23(b)(2) and Rule 23(b)(3).

25      27.     **Definition of the Class and Subclass:** Pursuant to Fed. R. Civ. P. 23:

26      A.     Wilder brings this Complaint against Defendants on behalf of the "Class,"
27 consisting of:

28

1      All persons in the United States who had a home equity line of credit reduced or
suspended by Chase where Chase maintained, based on faulty valuation models or
2      insignificant declines in property values that the reduction or freezing was due to a
substantial decline in the value of the property securing the HELOC.

3      B.     Wilder also brings this Complaint against Defendants on behalf of a notice sub-

4  class (the "Notice Subclass") consisting of:

5      All Class Members in the United States who received from Chase the "Important
Information About Your Home Equity Line of Credit" and "Answers to questions
6      you may have."

7  Excluded from the Class and Notice Subclass are 1) any Judge or Magistrate presiding over this

8  action and members of their families; 2) Defendants, Defendants' subsidiaries, parent companies,

9  successors, predecessors, and any entity in which Defendants or their parent companies have a

10  controlling interest and their current or former employees, officers and directors; 3) persons who

11  properly execute and file a timely request for exclusion from the class; 4) the legal representatives,

12  successors or assigns of any such excluded persons; and 5) HELOC accountholders who have had

13  their credit line(s) restored by Chase.

14      Plaintiff anticipates that amending the Class and Subclass definitions may become

15  necessary following discovery.

16      28.    **Numerosity:** The exact number of the members of the Class and Notice Subclass

17  is unknown and is not available to Wilder, but it is clear that individual joinder is impracticable.

18  Chase sent its generic credit line reduction letters to thousands of mortgagors, and a substantial

19  percentage of the recipients of these letters fall into the definition of the Class and Subclass. Class

20  members can be easily identified through Defendants' records and public records.

21      29.    **Commonality:** Common questions of fact and law exist as to all members of the

22  Class and Notice Subclass and predominate over the questions affecting only individual members.

23  These common questions include:

24      (a)    What was Chase's criteria for reducing the credit limits on its HELOCs;

25      (b)    What were Chase and CoreLogic's methods for valuing the homes securing the

26      HELOCs;

27      (c)    Whether Chase had a sound factual basis for reducing HELOC limits based on

28

purported significant declines in home values;

(d) Whether Chase's criteria for reducing HELOC credit limits, methods for valuing home values securing HELOCs, and ultimate reduction of HELOC limits violated Regulation Z;

(e) Whether Chase's reduction of the credit limits breached the terms of its HELOC agreements;

(f) Whether Regulation Z and/or Chase's HELOC agreements imposed contractual obligations on Chase to have a sound factual basis before lowering HELOC credit limits or suspending accounts due to a purported significant decline in value of the property securing the HELOC;

(g) Whether Chase's use of CoreLogic's valuations to freeze accounts or reduce the credit limits on their HELOC agreements was unfair and unlawful;

(h) Whether Chase gave lawful and fair notice to customers that their HELOCs were being reduced and the specific reasons for such reductions;

(j) Whether Chase's contracts and policies improperly purport to allow them to reduce credit limits or freeze HELOC accounts due to insignificant declines in property values or otherwise use triggering events inconsistent with Regulation Z;

(k) Whether Wilder and the Class members are entitled to relief and the nature of such relief.

30. **Typicality:** Wilder's claims are typical of the claims of other members of the Class and the Notice Subclass, as Wilder and other members sustained damages arising out of the wrongful conduct of Defendants, based upon the same transactions which were made uniformly to Wilder and the public. The California and federal laws under which Wilder's claims arise do not conflict with the laws of any other state in any material way.

31. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and Notice Subclass and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those

1 │ of the Class or the Subclasses and Defendants have no defenses unique to Plaintiff.

2 │     32. **Predominance and Superiority:** This class action is appropriate for certification

3 │ because class proceedings are superior to all other available methods for the fair and efficient

4 │ adjudication of this controversy, since joinder of all members is impracticable. The damages

5 │ suffered by the individual members of the Class and Notice Subclass will likely be relatively

6 │ small, especially given the burden and expense of individual prosecution of the complex litigation

7 │ necessitated by the actions of Defendants. It would be virtually impossible for the individual

8 │ members of the Class to obtain effective relief from the misconduct of Defendants. Even if

9 │ members of the Class themselves could sustain such individual litigation, it would still not be

10 │ preferable to a class action, because individual litigation would increase the delay and expense to

11 │ all parties due to the complex legal and factual controversies presented in this Complaint. By

12 │ contrast, a class action presents far fewer management difficulties and provides the benefits of

13 │ single adjudication, economy of scale, and comprehensive supervision by a single Court.

14 │ Economies of time, effort, and expense will be fostered and uniformity of decisions will be

15 │ ensured.

16 │     33. **Policies Generally Applicable to the Class:** This class action is also appropriate

17 │ for certification because Defendants have acted or refused to act on grounds generally applicable

18 │ to the Class and Notice Subclass, thereby making appropriate final injunctive relief or

19 │ corresponding declaratory relief with respect to Class as a whole. The policies of Defendants

20 │ challenged herein apply and affect members of both Class and Notice Subclass uniformly, and

21 │ Plaintiff's challenge of these policies hinges on Defendants' conduct, not on facts or law

22 │ applicable only to Plaintiff.

23 │
24 │     **Count I: Declaratory Relief Under TILA and Regulation Z**
    **(on behalf of Wilder and the Class against Chase)**

25 │     34. Plaintiff incorporates the above allegations by reference.

26 │     35. The Truth-in-Lending Act ("TILA") and its implementing regulation (Regulation

27 │ Z) prohibit Defendants from changing any of the terms of a mortgage or HELOC, including the

28 │ credit limit. 15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3). There is an exception under TILA

1 and Regulation Z for any period in which "[t]he value of the dwelling that secures the [HELOC]

2 declines significantly below the dwelling's appraised value" for the purpose of the plan which

3 permits Defendants to reduce the credit limits on their HELOCs. 15 U.S.C. § 1647(c)(2)(B); 12

4 C.F.R. § 226.5(b)(f)(3)(vi)(A).

5     36.     TILA and Regulation Z prohibit Chase from reducing the credit limits or freezing

6 its HELOCs unless the value of the home securing the credit line has actually declined

7 significantly. "Significant decline" for purposes of 12 C.F.R. § 226.5b(f)(3)(vi)(A) has been

8 interpreted as a decline in home value so that "the initial difference between the credit limit and

9 the available equity" based on the property's appraised value for the purposes of the plan "is

10 reduced by fifty percent." The Official Staff Commentary further states that Regulation Z "does

11 not require a creditor to obtain an appraisal before suspending credit privileges [but] a significant

12 decline must occur before suspension can occur." On August 26, 2008, the Office of Thrift

13 Supervision issued official guidance that warned it would violate Regulation Z, for example, to

14 "reduce the credit limits of all HELOC accounts in a geographic area in which real estate values

15 are generally declining without assessing the value of the collateral that secures each affected

16 HELOC account." (Emphasis in original).

17 *No Sound Factual Basis*

18     37.     Before reducing the limits of their customers' HELOCs, Chase had an obligation to

19 have a sound factual basis for concluding that the value of the homes had actually declined

20 significantly. Plaintiff alleges on information and belief that, instead, Defendants knowingly and

21 intentionally used a variety of dubious formulas and unreliable data to manipulate the values of

22 Chase's HELOC account holders' homes in order to justify the blanket reductions on HELOC

23 limits. On information and belief, Defendants' valuation methodology was flawed in that

24 Defendants or their agents, acting under their direction and control, failed to, among other acts or

25 omissions: (1) disclose the value of the property at the origination of the HELOCs, the value

26 necessary to reinstate the HELOCs, and the reasoning behind the use of those values; (2) validate

27 their AVMs on a periodic basis to mitigate the potential valuation uncertainty; (3) properly

28

1     document the validation's analysis, assumptions, and conclusions; (4) appropriately back-test

2     representative samples of the valuations against market data on actual sales; (5) account fairly for

3     improvements, property type or geographic comparables; and/or (6) take other necessary steps to

4     reasonably verify the accuracy of the valuations.

5          38.      Furthermore, and contrary to the representations made by Defendants' customer

6     service representatives, it violates TILA and Regulation Z to reduce Plaintiff's and the Class's

7     HELOC limits in the event of the 5% reduction in value of the property securing the HELOC, to

8     otherwise use triggering events that are inconsistent with the events set forth in Regulation Z,

9     and/or to include, as Chase did, such triggering events in its HELOC contracts.

10          39.      Defendants violated TILA and Regulation Z by reducing Plaintiff's HELOC limit

11     in the absence of the "significant decline" in the subject matter property value. The subject matter

12     property has not significantly declined in value. To the contrary, Wilder's home has increased in

13     value by $70,000 by Chase's appraiser's own numbers.

14          40.      Defendants further violated TILA and Regulation Z by claiming the ability to

15     freeze accounts or reduce credit limits in so-called high loan to value ("LTV") ratio situations

16     without disclosing how or when it considers a borrower's situation to constitute high LTV. On

17     information and belief, Plaintiff's original LTV was at most 78% (assuming full utilization of the

18     HELOC, which was not the case). Now that the property is worth $970,000, the LTV is at most

19     (assuming full utilization of the HELOC, which was not the case), 68%. Despite these values and

20     Regulation Z's instruction that the lender must reinstate lines of credit when the condition

21     supposedly warranting suspension no longer exists, Chase simply refuses to reinstate Wilder's and

22     the Class Members' HELOCs.

23          41.      Chase further acted in violation of TILA and Regulation Z by requiring Plaintiff

24     and the other Class Members to pay for appraisals upfront as part of its "appeals process." TILA

25     and Regulation Z provide that the burden of reinstating HELOC accounts and credit limits rests

26     with the lender. Although TILA and Regulation Z permits lenders such as Chase to push the

27     burden of seeking reinstatement onto HELOC borrowers, TILA and Regulation Z contemplate that

28

1   once a borrower requests reinstatement, the lender must then investigate the circumstances that

2   purportedly warranted suspension. Only after the lender's investigates may the lender charge bona

3   fide fees and appraisal costs to the borrower.

4        42.    Plaintiff and the other members of the Class have additionally been harmed

5   because Defendants have knowingly failed to disclose information that would permit Plaintiff and

6   the Class members to fairly determine whether to obtain an appraisal or otherwise challenge the

7   Defendants' action, including but not limited to:

8       a.    how Defendants compute the value of the properties,

9       b.    the actual threshold value Chase requires a customer to have an appraisal state

10           the property is worth so that Chase will reinstate or unfreeze the HELOCs,

11       c.    Chase's actual and specific reasons for the reduction of the HELOCs, and

12       d.    other necessary and material information.

13        43.    The Class and Defendants have adverse legal interests, and there is a substantial

14   controversy between the Class and Defendants of sufficient immediacy and reality to warrant the

15   issuance of a declaratory judgment as to whether Defendants' mass reduction of credit limits

16   violates TILA and Regulation Z.

17        44.    Wilder, on his own behalf and behalf of the other Class members, seeks a

18   declaratory judgment under 27 U.S.C. § 2201 that Chase's mass reduction of HELOC credit limits

19   in connection with their letter violates TILA and Regulation Z.

20                  **Count II: Violation of the TILA and Regulation Z**

                      **(on behalf of Wilder and the Class against Chase)**

21

22       45.    Plaintiff incorporates the above allegations by reference.

23       46.    Chase knowingly lacked a sufficient factual basis for reducing Plaintiff and the

24   Class's credit limits or prohibiting additional extensions of credit. Chase lacked a sound factual

25   basis for concluding the homes securing the HELOCs for Wilder and other Class members had

26   declined in value so as to support reducing the credit limits or prohibiting additional extensions of

27   credit. Chase also used improper formulas and triggering events for determining when such a

28   "significant decline" had occurred. Further, Chase improperly pushed the burden onto its

1   borrowers to pay for appraisals up-front, as opposed to performing its own investigation and then

2   charging only bona fide fees so incurred.

3        47.    Chase's reduction of the credit limit for Wilder and other Class members' HELOCs

4   violated TILA and Regulation Z.

5        48.    Chase's violations of TILA and Regulation Z damaged Wilder and the other Class

6   members. These damages occurred in the form of the appraisal fees, increased price of credit,

7   adverse effects on credit scores, loss of interest, and other damages.

8        49.    Wilder, on his own behalf and behalf of the other Class members, seeks actual

9   damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2) (B), and

10   costs of the action, together with reasonable attorney's fees under 15 U.S.C. § 1640(a)(3).

11                    **Count III: Violation of TILA and Regulation Z**

12             **(on behalf of Wilder and the Notice Subclass against Chase)**

13        50.    Plaintiff incorporates the above allegations by reference.

14        51.    Where a creditor prohibits additional extensions of credit or reduces the credit

15   limit, "the creditor shall mail or deliver written notice of the action to each consumer who will be

16   affected. The notice must be provided not later than three business days after the action is taken

17   and shall contain specific reasons for the action." Regulation Z, 12 C.F.R. § 226.9(c)(3).

18        52.    On information and belief, Chase provided Plaintiff and the members of the Class

19   notices of their HELOC reductions which were untimely and/or that did not contain specific

20   reasons for the action in violation of 12 C.F.R. § 226.9(c)(3).

21        53.    The notices fail to provide HELOC customers with enough information to

22   determine whether they should spend the time and resources to get an appraisal. Despite and the

23   fact that federal law requires a "significant decline in collateral value" prior to prohibiting

24   additional extensions of credit or reducing the credit limit, the notices are devoid of any specific

25   reasoning beyond that a valuation of $811,800, based on a standard method within the industry

26   "no longer supports the full amount of your line of credit. The notices do not state that $811,800

27   represents a "decline in value," how Defendants compute the value of the subject matter homes, or

28   the threshold value a customer needs to have an appraisal state the property is worth (and

1 Defendants' methods for computing that value) so that Chase will reinstate or unfreeze the

2 HELOCs. Instead, the notice requires customers to participate in an unfair appeals process

3 wherein Defendants refuse to make clear the values needed for reinstatement or use standards

4 allowed by Regulation Z.

5      54.     Defendants' violations of TILA and Regulation Z damaged Wilder and the other

6 Class members. These damages occurred in the form of appraisal fees, increased price of credit,

7 adverse effects on credit scores, loss of interest, and other damages. Wilder, on his own behalf

8 and behalf of the other Notice Subclass members, seeks actual damages under 15 U.S.C. §

9 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2) (B), and costs of the action, together

10 with a reasonable attorney's fee under 15 U.S.C. § 1640(a)(3).

11
12

**Count IV: Breach of Contract**
**(on behalf of Wilder and the Class against Chase)**

13      55.     Plaintiff incorporates the above allegations by reference.

14      56.     Wilder and the other Class members obtained HELOCs from Chase. The terms of

15 these HELOCs constitute a contract between the Class members and Chase.

16      57.     The HELOC agreements contain a term that provides:

17
18
19
20

> In additon to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect: (a) The value of the property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Line and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

Defendants drafted these agreements, which contemplate on their face triggering events that are

21 contrary to those set forth in Regulation Z.

22      58.     Wilder and the other Class members made all payments due to Chase and otherwise

23 fully performed under their HELOCs with Chase.

24      59.     The credit limit under the Class members' HELOCs was a material term of the

25 contract between Class members and Defendants.

26      60.     Chase materially breached the terms of the HELOCs by reducing the credit limit

27 for Wilder and other Class members' HELOCs where no significant decline in value had first

28

1  occurred.

2      61.    As a result, Wilder and the other Class members have suffered damages in the form

3  of the appraisal fees, the increased price of credit, lost interest, attorneys' fees, adverse effects on

4  Plaintiff's credit score, and other damages.

5      62.    Wilder, on his own behalf and behalf of the other Class members, seeks damages

6  for Chase's breach of contract, as well as interest and attorney's fees and costs pursuant to Cal.

7  Code Civ. Proc. § 1021.5.

8                  **Count V: Breach of Implied Covenants**

        **(on behalf of Wilder and the Class and Subclass against Chase)**

9

10      63.    Plaintiff incorporates the above allegations by reference.

11      64.    Wilder and the other Class members obtained HELOCs from Chase. The terms of

these HELOCs constitute a contract between the Class members and Chase.

12      65.    Implicit in the HELOC agreements were contract provisions that prevented Chase

13  from engaging in conduct which frustrates the Class members' rights to the benefits of the contract

14  or which would injure the right of the Class members' to receive the benefits of their HELOCs.

15      66.    The credit limit was a material term of the Class members' HELOCs. Chase

16  breached the implied covenant of good faith and fair dealing in the HELOCs by reducing the

17  credit limit for Wilder and other Class members' HELOCs without first having a sound factual

18  basis for claiming there was a decline in value, thereby preventing Wilder and the other Class

19  Members from receiving the benefits of their contracts.

20      67.    Chase further breached the implied covenant of good faith and fair dealing to the

21  Subclass by failing to provide sufficiently specific notice and by failing to provide customers with

22  material information regarding the calculations and values used to justify the reductions or freezes.

23      68.    Chase further breached the implied covenant of good faith and fair dealing by

24  pushing the burden of paying for appraisals onto the Class members up front, as opposed to, upon

25  a request for reinstatement by the borrower, performing its own investigation and then only

26  charging bona fide fees so incurred. Chase's shifting of the burden in this manner discourages

27  Class members from seeking reinstatement.

28

1        69.    Implicit in the HELOC agreements were contract terms that required Chase to

2   follow Regulation Z.

3        70.    Chase's breach of Regulation Z and the HELOC covenants caused Wilder and

4   other Class members to incur damages in the form of appraisal fees, the increased price of credit,

5   adverse effects on Plaintiff's credit score, denying them the benefits of their HELOC contracts and

6   other damages.

7        71.    Wilder, on his own behalf and behalf of the other Class and Subclass members,

8   seeks damages for Chase's breach of the implied covenant of good faith and fair dealing, as well

9   as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

10            **Count VI: Unjust Enrichment/Restitution**

          **(on behalf of Wilder and the Class and Subclass)**

11

12       72.    Plaintiff incorporates allegations 1-54 by reference.

13       73.    In the alternative, and in the event this Court finds that no contract provision

expressly governs the issues raised herein, Chase has knowingly received and retained benefits

14
from Plaintiff and the Class and Subclass members under circumstances that would render it

15
unjust to allow Chase to retain such benefits.

16
     73.    By using inaccurate and unsubstantiated valuation models, by using "triggering

17
events" that fall outside those permitted by Regulation Z to reduce the HELOCs, and by requiring

18
Plaintiff and members of the Class and Subclass to obtain appraisals upfront to seek reinstatement

19
of their HELOCs, Chase knowingly received and appreciated the benefits of up-to-date full

20
appraisals on homes in which they have security interests under circumstances where it would be

21
unjust for Chase not to bear the cost of the appraisals.

22
     74.    Furthermore, by illegally freezing and reducing the HELOCs, Chase gained the

23
time value of the money it would otherwise be potentially liable for lending out to its HELOC

24
customers.

25
     75.    As an actual and proximate result of Chase's conduct, Plaintiff and the Class and

26
Subclass members have incurred damages in the form of appraisal fees, the increased price of

27
credit, adverse effects on their credit score and other damages.

28

76.     Wilder, on his own behalf and behalf of the other Class and Subclass members, seeks damages for Chase's breach of the implied covenant of good faith and fair dealing, disgorgement of all revenue and profits gained through its breach of the implied covenant of good faith and fair dealing, as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count VII: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**
**(on behalf of Wilder and the Class)**

77.     Plaintiff incorporates the above allegations by reference.

78.     Chase's reduction of the credit limit for Wilder and other Class members' HELOCs violated TILA and Regulation Z.  With respect to the Class, Chase's conduct was deceptive and untrue as the AVM models used to determine the values of the properties securing such HELOCs were, on information and belief and as alleged above, without a sound factual basis, and inaccurate and unsubstantiated so as to make their use unfair, deceptive and readily subject to manipulation.  Furthermore, Chase used standards and triggering events to lower lines when significant declines had not occurred.  Given all of the other allegations in this Complaint, Chase's acts alleged herein were unfair.  These unlawful, deceptive, and unfair acts and practices constitute unfair competition in violation of the UCL.

79.     Chase has engaged in unfair, unlawful and fraudulent business acts and practices as set forth above.

80.     Chase violated the "unfair" prong of the UCL in that Chase's actions caused substantial injury to consumers, the injury caused by Chase's conduct is not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided.  Chase's conduct was further unfair because it shifted the burden of seeking reinstatement to the borrowers while depriving those borrowers of critical information, including the value and appraisal would have to show in order to allow reinstatement, needed to determine whether to seek reinstatement in the first instance.

81.     Chase has violated the "fraudulent" prong of the UCL in that Chase's statements regarding the availability of credit through the HELOCs were false and were likely to deceive a

18

1 reasonable consumer. Further, Chase's statements regarding any potential future reduction of

2 credit through the HELOCs would only occur through a substantial decline in value were false and

3 were likely to deceive a reasonable consumer.

4      82.     Chase has violated the "unlawful" prong of the UCL in that Chase's conduct was

5 undertaken in violation of TILA and Regulation Z.

6      83.     Chase's violations of the UCL caused Wilder and the other Class members to pay

7 money to Chase in the form of fees, lost interest, opportunity, adversely impacted credit and other

8 damages.

9      84.     As a direct and proximate result of Chase's systematically unlawful credit

10 reductions and account suspensions, Plaintiff and the Class members have suffered adverse effects

11 on their credit scores, as well as attorneys' fees and other damages.

12      85.     Wilder, on his own behalf and behalf of the other Class members, seeks an order

13 preliminarily and permanently enjoining Chase's unfair competition alleged herein and requiring

14 Chase to restore HELOC credit limits and cease freezing HELOCs in violation of Regulation Z,

15 and individual restitution of property gained by such unfair competition under the UCL (Cal. Bus.

16 & Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant to Cal. Code Civ.

17 Proc. § 1021.5.

18
            **Count VIII: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**
19
                 **(on behalf of Wilder and the Notice Subclass)**

     86.     Plaintiff incorporates the above allegations by reference.
20

     87.     Chase's form letter, customer service experience, and "appeals process" lacks
21
necessary details and information, including the specific reasoning for suspending or reducing the
22
HELOC credit limits and sufficient information, including the amount required for reinstatement,
23
to allow customers to determine whether they should appeal.
24
     88.     Chase has engaged in unfair, unlawful and fraudulent business acts and practices as
25
set forth above.
26
     89.     Defendants have violated the "unfair" prong of the UCL in that Chase's actions
27
caused substantial injury to consumers, the injury caused by Chase's conduct is not outweighed by
28

1    any countervailing benefits to consumers or competition, and the injury is one that consumers

2    themselves could not reasonably have avoided.

3         90.     Chase has violated the "fraudulent" prong of the UCL in that Chase's statements

4    regarding the availability of credit through the HELOCs were false and were likely to deceive a

5    reasonable consumer.

6         91.     Defendants have violated the "unlawful" prong of the UCL in that Defendants'

7    notice was undertaken in violation of TILA and Regulation Z.

8         92.     Wilder, on his own behalf and behalf of the other Notice Subclass members, seeks

9    an order preliminarily and permanently enjoining Defendants' unfair competition alleged herein,

10    and requiring Defendants to restore HELOC credit limits and cease freezing HELOCs in violation

11    of Regulation Z, and individual restitution of property gained by such unfair competition under the

12    UCL (Cal. Bus. & Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant

13    to Cal. Code Civ. Proc. § 1021.5.

14                    **Count IX: Aiding and Abetting**

           **(on behalf of Wilder and the Class against CoreLogic)**
15

16         93.     Plaintiff incorporates the above allegations by reference

17         94.     On information and belief, co-defendant CoreLogic, in an effort to secure repeat

and continued business, knowingly uses incomplete, inaccurate and/or unreliable data to
18

undervalue properties for Chase. CoreLogic fails to reasonably: (1) validate its AVMs on a
19

periodic basis to mitigate the potential valuation uncertainty; (2) properly document the
20

validation's analysis, assumptions, and conclusions; (3) appropriately back-test representative
21

samples of the valuations against market data on actual sales; (4) account fairly for improvements,
22

property type or geographic comparables; and/or (5) take other necessary steps to reasonably
23

verify the accuracy of the valuations.

24         95.     CoreLogic knowingly gives substantial support, assistance and help to Chase and

25    knows that Chase will use these falsely devalued property reports as pretext for lowering credit

26    limits or suspending HELOC accounts.

27         96.     As an actual and proximate result of CoreLogic's falsely devalued properties for

28

Chase, Plaintiff and the other class members suffered damages in the form of appraisal fees, loss of available credit, negatively impacted credit scores, increased price of credit and other damages.

### Count X: Civil Conspiracy
**(on behalf of Wilder and the Class against Chase and CoreLogic)**

97.     Plaintiff incorporates allegations 1-92 by reference.

98.     In the alternative, as part of a scheme to suspend HELOC accounts so that Chase could limit its exposure to risks posed by the United State's collapsing real-estate market (that it helped create in the first place), as well as to improve its cash position and otherwise strengthen its overall financials, Chase and CoreLogic, either through Quantrix Valuation or some other arrangement, agreed to intentionally use falsely low property values as pretext for lowering credit limits or suspending HELOC accounts for Chase customers.

99.     As an actual and proximate result of Chase and CoreLogic's scheme Plaintiff and the other class members suffered damages in the form of appraisal fees, loss of available credit, negatively impacted credit scores, increased price of credit and other damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in their favor and against Defendants as follows:

(a)     Certifying the action as a class action and designating Plaintiff and his counsel as representatives of the Class and Subclass;

(b)     Declaratory judgment under 27 U.S.C. § 2201 on Count I that the Defendants' HELOCs reductions violate federal law;

(c)     Statutory damages under 15 U.S.C. § 1640(a)(2)(B) for Count II;

(d)     Actual damages for the Subclass on Counts III, V, VI and VIII, including but not limited to appraisal fees, the increased price of credit, NSF fees, attorney's fees, interest and other damages in an amount to be proved at trial;

(e)     Actual damages on Counts II, IV, V, VI and VII for the Class including but not limited to appraisal fees, the increased price of credit, NSF fees, attorney's fees, interest and other damages in an amount to be proved at trial;

(f)    Preliminary and permanent equitable and injunctive relief for the Class, including enjoining the Defendants from further violations of Regulation Z and restoration of HELOC credit limits, including restitution of property gained by the unfair competition alleged herein, and an order for accounting of such property;

(g)    Preliminary and permanent equitable and injunctive relief for the Subclass, including enjoining the Defendants from further violations of Regulation Z, and restoration of HELOC credit limits restitution of property gained by the unfair competition alleged herein, and an order for accounting of such property;

(h)    Actual damages on Count IX for CoreLogic's aiding and abetting Chase;

(i)    Alternatively, actual damages on Count X for Chase and CoreLogic's agreement to lower credit limits based on falsely low valuations;

(j)    Awarding pre- and post-judgment interest; and

(k)    Granting such other and further relief as the Court may deem just and proper

## JURY TRIAL DEMAND

The Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: July 17, 2009

By:

Alan Himmelfarb (Cal. Bar. No. 90480)
KAMBEREDELSON, LLP
2757 Leonis Blvd.
Los Angeles, CA 90058
(323) 585-8696
ahimmelfarb@kamberedelson.com

Jay Edelson (*pro hac vice* pending)
Mike McMorrow (*pro hac vice* pending)
Evan Meyers (*pro hac vice* pending)
Steven Lezell (*pro hac vice* pending)
KAMBEREDELSON, LLC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60602
(312) 589-6370

# Exhibit A

JPMORGAN CHASE BANK, N.A.
ATTN: CREDIT LINE REVIEW
SUITE AZ1-1113
PO BOX 71
PHOENIX, AZ 85001





Ilululduldldldlumdlluhudldlululhullllmulhl

08019 CLO 1Z1 10609 -
ROBERT E WILDER
SUSAN S WILDER

**Important Information about your Home Equity Line of Credit:**
You Cannot Draw Additional Amounts on the Account Ending in: ▮▮▮▮

Dear Robert E Wilder and Susan S Wilder:

At Chase we are committed to helping customers achieve and sustain homeownership, and we're doing everything we can to help homeowners ensure that they don't borrow more than their home is worth. With home values falling in many parts of the country, we've used a proven valuation method to estimate your home's value at $811,800. Unfortunately, that valuation no longer supports the full amount of your Line of Credit, so we are suspending future draws against your account as of April 17, 2009.

What does this mean for you?
1.  You will not be able to draw on the line.
2.  You will continue to receive a monthly statement which will include current payment information, and you should continue to make payments on any outstanding balance on your line.
3.  If you have automatic deduction for the monthly payment on your line, this service will continue.
4.  If you use your line to automatically pay other bills you should advise the payee(s) and use an alternate payment method.
5.  If you use your line as overdraft protection for a deposit account you should consider one of the other overdraft options available to you, such as a savings account or credit card.
6.  While we believe the automated valuation of your property is accurate, you may appeal the valuation in writing. Please see the attached Q & A for details on the appeal process.

We appreciate that you have handled your home equity account responsibly, and want to make sure you know this change is occurring because of the significant decline in your property value. If you have any questions, please contact us toll free at 1-866-405-4988 between 9:00am and 8:00pm Monday to Friday and on Saturday from 9:00am to 6:00pm, Eastern Time.

Sincerely,

Chase

Please Note. Our decision may have been based in part on information obtained from the consumer credit agency listed below. We may have used the information contained in your credit bureau file to obtain the current amount of your first mortgage, if any. Our use of this credit information will in no way impact your credit score.

The reporting agency listed below may have provided information used for our decision but is unable to supply specific reasons why we have taken this action. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer-reporting agency. You also have a right to a free copy of your report from the agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency. If you would like to receive a free copy of your credit report, please send a copy of this letter along with your request and Social Security Number to:

By Mail:      Experian                    By Phone:  1-888-397-3742 (Experian)
              P.O. Box 2002
              Allen, TX 75013

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Act. The federal agency that administers compliance with this law concerning this creditor is: Office of the Comptroller of the Currency, Customer Assistance Unit, 1301 McKinney Street, Suite 3450 Houston, TX 77010-9050.

**Answers to questions you may have:**

**Q. Why did Chase take this action at this time?**
A. We are doing everything we can to keep homeowners from owing more than their home is worth, especially as home values in many areas of the country are falling. Your property's value no longer supports your full Home Equity Line of Credit.

**Q. How did you get the new value for my home? I have not met with an appraiser from Chase.**
A. We used an industry standard method to value your property that did not require an appraiser to enter your home. We have confidence that our valuation for your property is accurate. If you disagree and feel that your home value has not declined please see below for our appeals process.

**Q. What can I do if I disagree with the decline in my property value?**
A: We offer an appeals process. If you disagree with the decline in your property value, it will be your responsibility to call us at 1-866-405-4988 to initiate your appeal. We will put you in contact with a third-party independent appraisal management company to order an appraisal of your property. When completed, the appraisal company will send the completed appraisal directly to you. **The completed appraisal, along with a written request for reinstatement, should be faxed** by you **to 1-866-221-0655 (toll free)** or mailed to the address below, for review.

> JPMorgan Chase Bank, N.A.
> Attn: Credit Line Review
> Suite AZ1-1113
> PO Box 71
> Phoenix, AZ 85001

We will respond to all properly-submitted appeals within 30 days of receipt. Any reinstatement of the credit line will be at our discretion and may be subject to other conditions that prevent reinstatement.

**Q: What is the cost of the appraisal?**
A: The cost varies based on the type of appraisal service your property will require. You will be responsible for paying the appraisal fee. The appraisal company will review the type and cost with you before starting work.

**Q. I wrote some checks before I received your letter. What should I do?**
A. Please call us at 1-866-405-4988 to discuss the appropriate method of handling the processing of the check(s). You can also view whether or not your checks have cleared by logging into chase.com.

**Q. My taxes just increased. How could my home value have decreased?**
A. You will need to contact your local Taxing Authority about how your home is valued for tax purposes and to inquire about its appeals process, if necessary.

**Q. When will I be able to access my line again? How do I remove the block on my account?**
A. We will review your line when we receive from you satisfactory documentation that the property's value has increased.

**Q. Where in my loan documents does it state that Chase has the right to block my line of credit?**
A. Federal law (Truth in Lending Act/Regulation Z) allows home equity creditors to block the credit line or reduce the credit limit if there has been a significant decline in collateral value. That authority is normally found in the "Default, Cancellation of Credit Privileges," "Lender's Rights," or "Termination and Acceleration; Suspension of Advances and Reduction of Credit Limit; Other Remedies" sections of your loan documents.

**Q. Does this action affect my rate, my fixed rate locks or how my payment is calculated?**
A. No, this action does not impact your rate, any locks you may have on your account or how your payment is calculated.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

# BY FAX

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| ROBERT WILDER, an individual, on his own behalf and on behalf of all others similarly situated, | JPMORGAN CHASE BANK, N.A., and FIRST AMERICAN CORELOGIC, INC., |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Alan Himmelfarb, KAMBEREDELSON, LLP 2757 Leonis Blvd., Los Angeles, CA 90058 (323) 585-8696, ahimmelfarb@kamberedelson.com | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No          ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. § 1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | PERSONAL INJURY | PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | PERSONAL INJURY | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 310 Airplane | ☑ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 350 Motor Vehicle | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | |

**SACV09-834 DOC(RNBX)**

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                                        CIVIL COVER SHEET                                        Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Arizona --Plaintiff ROBERT WILDER |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County - Defendant FIRST AMERICAN CORELOGIC, INC. | Ohio - Defendant JPMORGAN CHASE BANK, N.A |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange, California | Arizona, Ohio |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date July 17, 2009

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Robert N. Block.

The case number on all documents filed with the Court should read as follows:

## SACV09- 834 DOC (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
    **312 N. Spring St., Rm. G-8**
    **Los Angeles, CA 90012**

[X] **Southern Division**
    **411 West Fourth St., Rm. 1-053**
    **Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
    **3470 Twelfth St., Rm. 134**
    **Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Alan Himmelfarb
KAMBEREDELSON, LLP
2757 Leonis Blvd., Los Angeles, CA 90058
(323) 585-8696, ahimmelfarb@kamberedelson.com

**FOR OFFICE USE ONLY**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ROBERT WILDER, an individual, on his own
behalf and on behalf of all others similarly situated,

PLAINTIFF(S)

v.

JPMORGAN CHASE BANK, N.A., and
FIRST AMERICAN CORELOGIC, INC.,

DEFENDANT(S).

CASE NUMBER

**SACV09-834 DOC(RNBX)**

**SUMMONS**

TO:   DEFENDANT(S): _____

_____

A lawsuit has been filed against you.

Within _20_ days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer
or motion must be served on the plaintiff's attorney, Alan Himmelfarb, KamberEdelson____, whose address is
2757 Leonis Blvd., Los Angeles, CA 90058_____.  If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint.  You also must file
your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____ JUL 17 2009 _____

By: _Nancy Castro_

Deputy Clerk

*(Seal of the Court)*

**SEAL**

**FOR OFFICE USE ONLY**

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed
60 days by Rule 12(a)(3)].*